## Kerr v. Belcher, et al.

(Decided October 26, 1910.)

## Appeal from Pike Circuit Court.

Reservation in Deed—Void for Indefiniteness.—A deed for one hundred acres of land recited that "there is excepted from this conveyance three acres for depot and other purposes." At the time the deed was made the railway company that was constructing its road through the land had not located its depot upon the land. Before the depot was erected, the vendee sold a small parcel of the hundred acres; Held, that the reservation attempted to be made in the deed was too indefinite to prevent the vendee from selling any of the land or charge a purchaser from him with notice that any of the land purchased by him might fall within the reservation.

ROSCOE VANOVER for appellant.

BUTLER & MOORE for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In August, 1903, the appellant J. C. Kerr conveyed to his son Melvin M. Kerr a tract of land containing one hundred acres, more or less, that was described in the deed in a general and indefinite way. The deed recited that "there is excepted from this conveyance three acres for depot and other purposes." In June, 1906, Melvin M. Kerr by a writing agreed to and did sell to the appellee, in consideration of fifty dollars, one-fourth of an acre of this 100 acres of land. This writing was signed by Melvin M. Kerr, who also signed the name of J. C. Kerr.

In May, 1908, the appellant filed his petition against Belcher, in which he set out the sale of the land to his son and the reservation of three acres for depot and other purposes, and averred in substance that at the time the deed was made the Chesapeake & Ohio Railway Company was constructing a line of railway through the tract of land, and it was understood that the depot was to

be established on the land opposite the mouth of Ferrell's creek, but at the time the deed was made to his son the depot had not been located. He averred that since he made the deed to his son the depot had been located, and the three acres reserved could now be definitely located, and that the reservation was understood to embrace three acres nearest to and including the depot site, and that the lot that appellee by virtue of his purchase claimed was within the boundary of three acres of the 100 acre tract nearest to the site of the depot. He asked that three acres of the land next to and including the depot be allotted to him by commissioners appointed for that purpose and that the appellee Belcher be required to surrender to him the possession of any part of the three acres that he claimed by virtue of the purchase from Melvin M. Kerr.

To this petition an answer was filed, and after the evidence was taken the court rendered a judgment finding that the sale by Melvin M. Kerr to appellee was ratified by J. C. Kerr, and further that the three acres excepted out of the conveyance by J. C. Kerr to his son Melvin M. Kerr had never been located or the depot grounds definitely established, and dismissed the petition in so far as it sought to disturb appellee in his possession under the purchase from Melvin M. Kerr. The judgment further recited that as Melvin M. Kerr and his wife had executed to Belcher a deed, which had not been delivered to him, although he had paid the purchase price, the commissioner of the court should make a conveyance for Melvin M. Kerr and his wife to appellee. From this judgment this appeal is prosecuted.

It will be observed that the deed from J. C. Kerr to his son does not give any description whatever of the three acres, excepted from the conveyance. At the time the deed was made, no depot had been located on the land, nor was it located when this suit was filed. The reservation of three acres in the deed is so indefinite and uncertain, taken in connection with the fact that the depot had not been located, that the rights of any purchaser from Melvin M. Kerr could not and would not be affected or prejudiced by the reservation. But, aside from this, there is some evidence that Melvin M. Kerr in selling the small parcel in controversy to Belcher was acting as the agent of J. C. Kerr, and this is further shown by a letter written in November, 1907, by J. C. Kerr to Belcher, in which J. C. Kerr said in substance

that he knew of his (Belcher's) purchase of the lot from Melvin M. Kerr, and where it was located, and that he had decided to let him keep it, and requested that Belcher send the deed to him so that he could make him a title to it. Without this written acknowledgment and confirmation of the sale made by Melvin M. Kerr to Belcher, we see no reason why the title of Belcher should be disturbed by appellant, and the letter he wrote takes from his case any merit it might otherwise have. We have no doubt of the correctness of the judgment of the lower court.

It is said, however, that the court erred in directing the commissioner to make a deed without first giving J. C. Kerr an opportunity to do so. But there is no merit in this objection. The lower court was of the opinion that Melvin M. Kerr had title to the land that he sold to Belcher, and as Melvin had been paid for the land it was his duty to make Belcher a deed, and as he had not done so the commissioner was directed to make one for him, as authorized by section 394 of Civil Code. With this feature of the case J. C. Kerr had nothing to do. The court did not direct that any deed should be made for him.

The judgment is affirmed.